**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: MARCIA CAMPBELL,<br><br>　　　　　　　　　Debtor. | Chapter 7<br><br>Case No. 17-bk-13518 (CGM) |
| SYLVESTER DERRICK DEACON derivatively on behalf of DVM SECOND CHANCE LLC,<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>MARCIA CAMPBELL,<br><br>　　　　　　　　　Defendant. | Chapter 7<br><br>Adversary Proceeding No.<br>18-ap-01542 (CGM) |

**OPPOSITION TO DEFENDANT MARCIA CAMPBELL'S MOTION TO VACATE THE DEFAULT JUDGMENT AND CROSS MOTION TO HAVE DEFAULT JUDGMENT ENTERED ON ALL CLAIMS**

Sylvester Derrick Deacon ("Mr. Deacon"), derivatively on behalf of DVM Second Chance LLC ("Plaintiff") files this opposition to Defendant Marcia Campbell's motion to vacate entry of judgment, and files this cross motion to have a default judgment entered Defendant, denying discharge of the Fraud Action, defined below, as well as denying discharge of her entire chapter 7 bankruptcy. In support of Plaintiff's motion, Plaintiff respectfully states:

**PRELIMINARY STATEMENT**

1.　　Mr. Deacon brings this adversary proceeding derivately on behalf of Plaintiff DVM Second Chance LLC. (DVM, the Plaintiff, is a Florida LLC owned equally by both Mr. Deacon and Defendant Marcia Campbell.) Defendant failed to timely answer the complaint, entry of default was entered, and now Defendant seeks to have this entry of default vacated. That motion should be denied, and instead this Court should enter a default judgment against Defendant on all claims.

1

2. The underlying Fraud Action has been litigated in the Supreme Court of New York, Bronx County, for almost two years. During this litigation, Plaintiff has obtained unequivocal proof that Defendant made false statements to a mortgage company to take out a loan on a property at 944 Cranford Avenue in the Bronx – Plaintiff's only significant asset. She then stole the proceeds of this mortgage, and when Mr. Deacon realized what was going on and secured a restraining order, she violated that order and scrambled to loot DVM's accounts even further. None of this can be disputed; Defendant has already admitted this under oath. Therefore, there is no possible meritorious defense. Defendant's motion should be denied, and Plaintiff's cross motion should be granted.

## JURISDICTION

3. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334.

4. This is a core proceeding under This is a core proceeding under 28 U.S.C. § 157(a)(H), (I), and (J)..

5. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## ADVERSARY PROCEEDING AND DEFAULT

6. Defendant Marcia Campbell commenced the above-captioned case under chapter 13 on December 8, 2017, and after retaining counsel it was converted to a chapter 7 case on January 17, 2018. Plaintiff was not notified of the bankruptcy filings until many months later, as described further below.

7. Plaintiff filed this adversary proceeding on May 12, 2018, with the consent of the Receiver for DVM Second Chance LLC, seeking to have *Deacon, et al. v. Campbell*, 28498/2016E (Supreme Court, County of The Bronx) (the "Fraud Action") exempted from discharge in bankruptcy under 11 U.S.C. § 523(a)(2). *See* Dkt. No. 1.

8. Plaintiff promptly amended this adversary proceeding on May 18, 2018 to include a

claim objecting to discharge of the entire chapter 7 estate under 11 U.S.C. § 727(a)(2), (a)(4) and (a)(7). *See* Exhibit 1 of the Declaration of Rob Rickner, dated August __, 2018 (exhibits to which are hereinafter referenced as "Ex. _").

9. In accordance with Bankruptcy Rule 7004(b)(1), the Summons and Complaint, along with the Amended Complaint, were served upon both Defendant and her counsel, by first class mail, to the addresses she provided in her bankruptcy filings. Ex. 2. The certificate of service was filed on May 21, 2018. *Id*.

10. We know that Defendant was aware of at least the initial Complaint filed on May 12, 2018, because on May 18, 2018 she called Mr. Deacon's wife to scream at her and make vague threats. Ex. 3 (letter documenting the incident, along with evidence of prior accusations).

11. Defendant, however, failed to respond to this adversary action, and Plaintiff filed for entry of default, which was granted on July 2, 2018. Ex. 4. Roughly a month later, Defendant filed a motion to vacate the default, although it appears some exhibits may have been omitted from the filing. Ex. 5.

## UNDERLYING FACTS

**Deacon and Campbell Own DVM Second Chance LLC**

12. DVM Second Chance LLC is a limited liability corporation, incorporated in Florida. *See* Deposition of Marcia Campbell (hereinafter "Dep. _") at 12, attached as Rickner Decl. Ex. 6. Mr. Deacon and Defendant are the only members of DVM, the Plaintiff. Dep. 13. They are both listed on the Articles of Organization, dated August 14, 2015. Rickner Decl. Ex. 7. Plaintiff purchased an apartment building at 944 Cranford Avenue in the Bronx on October 10, 2015, using money provided by Mr. Deacon: "Q: Is it correct to say that the funds to purchase 944 Cranford came from Derrick Deacon's Chase account? A: Yes." Dep. 80-81.

13. Despite her admission that Deacon is still a member of DVM, she entirely dismisses

3

Deacon's interest in the company and claims: "Marcia Campbell is DVM Second Chance." Dep. 100.

**Campbell Realizes Deacon Will Sue, So She Takes Out the Mortgage**

14. Deacon stopped trusting Campbell, and said he would sue her. Campbell was well aware of this and even discussed it with one of Deacon's lawyers around October 2016. Dep. 96-97.

15. Soon after, Campbell took out a $150,000 mortgage on 944 Cranford – without telling Deacon: "Q: Did you discuss taking out the $150,000 mortgage with Derrick Deacon before you took it out? A: We wasn't talking no. Q: So you just did it on your own? A: Yes." Dep. 88.

16. But Defendant never told the mortgage company that the other owner of Plaintiff, Mr. Deacon, had not approved the mortgage. Instead, she fraudulently signed and provided an affidavit swearing that:

> At a meeting of the Members of the above-mentioned Company, duly called and held this day at which a quorum was present and acted throughout, the Members unanimously adopted the following resolution, which has not been modified or rescinded:
>
> RESOLVED, that the corporation execute and deliver to Bridge Lending Group LLC or to any other person or corporation a Mortgage and an Assignment of Leases and Rents covering the property owned by said Company located a 944 Cranford Avenue, Bronx NY 10466 That said Mortgage and Assignment of Leases and Rents be in such form and contain such interest rate or rates, time of payment, including installment payments, and such other terms, provisions, conditions, stipulations and agreements as the officer of the corporation executing the same may deem proper and advisable; and that the Managing Member or any other officer of the Company be and each of them hereby is authorized to execute and deliver such note and mortgage and such other instruments as such officer may deem proper and advisable and to affix the seal of the Company thereto.

Ex. 8.

17. No such meeting ever occurred, and the mortgage was never approved by the other member, Mr. Deacon. Dep. 88.

18. After fees, the mortgage company paid $115,924.58 to DVM. Defendant deposited the money into DVM's account at New Covenant Federal Credit Union ("New Covenant"). And then she promptly started spending it on herself. Rickner Decl. Ex. 9 pg 12; Dep. 63-64. First, she took out

$9,999 in cash and used it to pay her own bills. Ex. 9 pg 12; Dep. 63-64. Then she wrote her husband, Fred Campbell, a check for $10,000 "to pay him back some money" she owed him. Ex. 9 pg 13; Dep. 64. And she wrote a check to Valaska Brunner Trueluck to pay back a personal loan that Campbell had taken out. Ex. 9 pg 13; Dep. 65.

19. On December 17, 2016, Deacon's counsel sent her an email notifying her of the upcoming motion for a Temporary Restraining Order related to DVM. Ex. 10; Dep. 109-110. So Campbell started withdrawing the money even faster. On December 20, 2017, she took out another $9,500 in cash to pay her own bills, "Nothing to do with DVM." Ex. 9 pg 14; Dep. 66. That same day she wrote her husband a check for $30,000, "just for him to have." Ex. 9 pg 14; Dep. 66-67. And she wrote a check to Kent A. Jarvis, to pay back another personal loan she had taken out. Ex. 9 pg 14; Dep. 67-68.

20. Finally, on December 22, 2016, she secretly opened a brand-new DVM account at New Covenant, ending in 89, by transferring $20,656.83 from other DVM's account, ending in 24. Ex. 11; Dep. 67-69. At her deposition, she had no explanation for why she opened the new account. Dep. 68.

**Campbell Violates A Court Order by Emptying the DVM Account**

21. Campbell never appeared to oppose the motion, and this Court issued a Temporary Restraining Order, on December 20, 2016, that stated:

> ORDERED that pending the hearing on this motion, Marcia Campbell is hereby restrained from transferring or encumbering the premises situated in the City of New York, Bronx County, State of New York, with a street address of 944 Cranford Avenue, Bronx NY 10466, that is also known as Block 5124, Lot 121 in Bronx County, City of New York, State of New York, and Marcia Campbell is hereby further restrained from transferring or encumbering her interest in DVM Second Chance LLC.

Ex. 12. Soon, counsel learned that Campbell had already taken out a mortgage on 944 Cranford, and thus moved for a second Temporary Restraining Order to stop Campbell from spending the

proceeds. It was granted on December 23, 2016:

> ORDERED that pending the hearing on the preliminary injunction previously scheduled for January 6, 2017, Marcia Campbell is hereby restrained from moving, transferring, or in any way disposing of any portion of the $115,924.58 she removed via mortgage from 944 Cranford Avenue, and to effectuate this restraining order, Campbell is further restrained from moving, transferring, or in any way of disposing any amounts less than $115,924.58 that are held in any accounts belonging to either DVM Second Chance LLC or Marcia Campbell personally.

22. Ex. 13. This Restraining Order was served through overnight mail, per the order, and it arrived on December 28, 2016. Ex. 14. The first Restraining Order, and the Summons and Complaint, were served through hand delivery on December 30, 2016, at 11:03 a.m. Ex. 15. Campbell does not dispute this. Dep. 20-21.

23. But instead of following these Orders, Campbell went straight to New Covenant and took even more money out of DVM's account: At 3:43 p.m., December 30, 2016, a few hours after being personally served the first Restraining Order, and two days after she received the second one, she took out $9,500 in cash. Ex. 11 pg 1 (showing time of withdrawals); Dep. 71-72. And at 4:01 p.m. she wrote yet another check to her husband, Fred Campbell, for $9,000 – for him to keep in his personal account. Ex. 11 pg 1; Dep. 71. That money is gone. Dep. 71-72.

**Defendant Defrauds this Court, and is Held in Contempt in the Bronx**

24. Defendant filed for bankruptcy in December of 2017, but never told Plaintiff or counsel. She even appeared for a deposition on February 22, 2018, and never mentioned the bankruptcy. Rickner Decl. ¶17.

25. On, March 12, 2018, Plaintiff filed a motion to have Defendant held in contempt for her numerous violations of the Supreme Court, County of Bronx. An Order to Show Cause was signed, and served personally on Defendant's counsel. Ex. 16. Defendant never opposed, although her counsel admitted she had received the motion and claimed he was going to submit an opposition either in person or filed on the New York State Electronic Filing System. Rickner Decl. ¶18.

26. Defendant's counsel, however, decided not to appear for the contempt hearing, claiming he was sick after counsel emailed him to ask where he was. Ex. 17. The court was not impressed by this excuse and granted the contempt motion. Ex. Rickner Decl. ¶18.

27. As counsel was leaving the Supreme Court, County of Bronx, he received a call from a paralegal at Defendant's current bankruptcy counsel. This was the first time Mr. Deacon's counsel learned that Defendant had filed for bankruptcy. Rickner Decl. ¶17.

28. Defendant, however, never disclosed her ownership in DVM Second Chance LLC on her bankruptcy disclosures. Ex. 20. When the trustee asked her about the omission, she had no coherent explanation. *Id*. Also, despite the suspicious timing of the call from the bankruptcy attorney, Defendant claimed to know nothing about the contempt order. *Id*.

## ARGUMENT

**Defendant's Motion to Vacate the Entry of Default Should Be Denied**

29. Under Federal Rule of Civil Procedure 55 ("Rule 55"), made applicable by Bankruptcy Rule 7055, entry of default may only be vacated when the defendant can demonstrate, with specific facts, that there is a meritorious defense to the case. The absence of a meritorious defense alone is sufficient to deny a motion to vacate entry of default. *See New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005). And a defendant cannot claim a meritorious defense with "mere conclusory statements." *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986).

30. Here, there is ample evidence – Defendant's own sworn testimony – that she used a false affidavit, and false pretenses, to take out a mortgage on 944 Cranford, and then she took the proceeds of the mortgage and used it for her own ends. Worse, once it was clear the other owner of Plaintiff, Mr. Deacon, was going to sue her, she accelerated her scheme and tried to hide money in a new bank account.

31. With these admissions, there is no defense to Plaintiff's claim under 11 U.S.C.

523(a)(2); *see Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006 ("The elements of actual fraud under Bankruptcy Code incorporate the general common law of torts and likewise include a false representation, scienter, reliance, and harm."). She made false statements to the mortgage company, the mortgage company relied on them, and she caused injury to Plaintiff by burdening its primary asset, 944 Cranford, with a mortgage that ultimately cost $195,000 to repay. The claims in the Fraud Action should not be discharged in Defendant's bankruptcy.

32. Further, the claims in the Fraud Action should not be discharged under 11 U.S.C. 523(a)(4).[1] Defendant was acting in a fiduciary capacity when she signed the mortgage documents and withdrew funds from DVM's accounts. *See* Fla. Stat. Ann. § 605.04091(1) ("Each manager of a manager-managed limited liability company and member of a member-managed limited liability company owes fiduciary duties of loyalty and care to the limited liability company and members of the limited liability company.") By taking money for herself, and her family, by using a mortgage secured through a false affidavit, Defendant has unequivocally committed fraud while acting in a fiduciary capacity.

33. Finally, Defendant should be denied discharge entirely under 11 U.S.C. 727(a)(4). She failed to list her interest in Plaintiff in her disclosures to this Court, and she hid the bankruptcy from Plaintiff's counsel and Mr. Deacon until she was held in contempt and needed the bankruptcy stay for protection. *See In re Boyer*, 328 F. App'x 711, 715 (2d Cir. 2009) ("To prove a § 727(a)(4)(A)

---

[1] While the Amended Complaint does not mention 11 U.S.C. 523(a)(4) specifically, that is no bar to granting the relief requested here. The claim is the same in kind as what was stated specifically in the Amended Complaint. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). And default only decides factual allegations, not legal claims. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (explaining that "a district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action").

violation, a creditor must show that: "1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case.") (citation omitted).

34. At her section 341 meeting, Defendant had no coherent explanation as to why she omitted her ownership in Plaintiff from her bankruptcy disclosures. This is sufficient to establish intent because "[a] reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge." *In re Levi*, 581 B.R. 733, 746 (Bankr. S.D.N.Y. 2017). At best, Defendant was reckless in failing to disclose her interest in Plaintiff, although given that she also concealed the bankruptcy from Plaintiff – and this is her third time filing for bankruptcy in the last several years – there is sufficient evidence of intent as well.

35. None of these facts can be disputed by Defendant, so she has no meritorious defense to this action and her motion tov acate the entry of default should be denied.

**Plaintiff's Cross Motion for Entry of a Default Judgment Should be Granted**

36. Based on these same facts, this Court should instead grant Plaintiff's cross motion for a default judgment.

37. Rule 55, made applicable by Bankruptcy Rule 7055, provides for entry of a default judgment by the court. Rule 7055-1 of this Court's Local Rules provides: "A default judgment may be sought only by motion, which shall be served on the defaulting party, [its] attorney … and except in an adversary proceeding to determine dischargeability, the trustee." Further, as required under Rule 7055-2 of this Court's Local Rules, attached to this motion are "(i) the Clerk's certificate of default, (ii) a copy of the claim or complaint to which no response has been made, (iii) a proposed form of default judgment, and (iv) proof of service of the application."

38. In determining whether to enter a default judgment pursuant to Civil Rule 55, a court

must determine "whether the unchallenged facts [in the complaint] constitute a legitimate cause of action." *Fleet Credit Card Servs. L.P. v. Macias (In re Macias)*, 324 B.R. 181, 186 (Bankr. E.D.N.Y. 2004) (citing *Smith v. Household Fin. Realty Corp. of N.Y. (In re Smith)*, 262 B.R. 594, 597 (Bankr. E.D.N.Y. 2001)). In determining this, "the court must accept as true all of the factual allegations of the complaint, except those relating to damages." *Id*. (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

39. In this case, as shown above, not only are the allegations in the Amended Complaint well pled, they are proven by the sworn testimony of the Defendant in this action. Consequently, a default should enter in this case.

## NOTICE

40. Notice of this motion has been given to Defendant's counsel through the United States Bankruptcy Court Southern District of New York Official Court Electronic Document Filing System, as Defendant's counsel has appeared. In addition, copies of these motion papers are being served via first class mail just prior to filing.

## NO PRIOR REQUEST

41. No prior request for the relief sought herein has been made to this or any other court.

**WHEREFORE**, Plaintiff respectfully requests that this Court deny Defendant's motion to vacate the entry of default and enter the proposed default judgment and grant the Plaintiff such other and further relief as this Court deems just and proper.

Dated: New York, New York
August 14, 2018

Rickner PLLC

By: /s/

Rob Rickner

233 Broadway Suite 2220
New York, New York 10279
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorney for Plaintiff*