```
                  UNITED STATES BANKRUPTCY COURT
                   SOUTHERN DISTRICT OF NEW YORK

                                   .
IN RE:                             .    Chapter 7
                                   .
Marcia Campbell,                   .
                                   .
         Debtor.                   .    Bankruptcy #17-13518 (CGM)
...................................................

                      U.S. Bankruptcy Court
                    One Bowling Green-Room 511
                       New York, NY 10004
                          May 2, 2018
                          11:00 a.m.

                    TRANSCRIPT OF 341 MEETING


APPEARANCES:

Chapter 7 Trustee:          John S. Pereira, Esq.
                            641 Lexington Ave.
                            New York, NY 10022

For The Debtor:             Denise A. Melville-Blackman, Esq.
                            Blackman & Melville, PC
                            11 Broadway-Ste. 615
                            New York, NY 10004

For Ninel Baker:            Deborah B. Koplovitz, Esq.
                            Anderson Kill, PC
                            1251 Ave. of the Americas
                            New York, NY 10020

For 3939 White Plains Road  Gary O. Ravert, Esq.
Funding:                    Ravert, PLLC
                            116 West 23rd St.-5th Fl.
                            New York, NY 10011
```

```
 1   years you owned the real estate agency?
 2           MS. CAMPBELL:  I don't know, sir.
 3           MR. PEREIRA:  But that was your -- that is your
 4   signature, you signed these, correct?
 5           MS. CAMPBELL:  Yes.
 6           MR. PEREIRA:  And this is your fourth filing for
 7   bankruptcy, so you're not totally unfamiliar with bankruptcy,
 8   are you?
 9           MS. CAMPBELL:  It is the third one, it is the third,
10   because we converted.
11           MR. PEREIRA:  It's the third, and the conversion
12   makes it fourth.  You filed three --
13           MS. CAMPBELL:  Okay, okay, sir.
14           MR. PEREIRA:  -- Chapter 13's and a conversion to a
15   7.
16           MS. CAMPBELL:  Yes, sir, yes, yes.
17           MR. PEREIRA:  Why does it not list anywhere on your
18   schedules filed under oath --
19           MS. CAMPBELL:  Even 13?  Even 13 (indiscern.)
20           MR. PEREIRA:  Excuse me, I haven't finished the
21   question yet.
22           MS. CAMPBELL:  Okay, sir.
23           MR. PEREIRA:  Why does it not show anywhere on your
24   schedules filed under oath that Mr. Torres as the receiver is
25   holding $460,000 from the sale of a business that you had an
```

```
 1   interest in?
 2            MS. CAMPBELL:  I don't know, I just told it to Mr.
 3   Nigel the other day, because I didn't know that it has to go
 4   to (indiscern.)
 5            MR. PEREIRA:  But you knew that there was -- you
 6   knew that the judge was holding -- that a receiver was
 7   appointed, right?
 8            MS. CAMPBELL:  Yes, for that property.
 9            MR. PEREIRA:  Mr. Torres.  For that property, right.
10            MS. CAMPBELL:  Yes.
11            MR. PEREIRA:  And you know that Mr. Torres is
12   holding the money from the sale.
13            MS. CAMPBELL:  Because I wasn't getting any money
14   from it, so I didn't need to put it there.  It was an
15   investment.  So it's separate.  It was an investment with me
16   and my brother-in-law, DVM Second Chance.  It's a family --
17            MR. PEREIRA:  It's a business --
18            MS. CAMPBELL:  Yes.
19            MR. PEREIRA:  -- that you owned 100% of.
20            MS. CAMPBELL:  Yes.
21            MR. PEREIRA:  Right?
22            MS. CAMPBELL:  Yes, yes.
23            MR. PEREIRA:  100% of.
24            MS. CAMPBELL:  Yes, but it mash up because they take
25   the money and the property.  It was just about real estate.
```

```
 1              MR. PEREIRA:  You mean besides the $18,500 that the
 2    judge says you took.
 3              MS. CAMPBELL:  He didn't tell me that.
 4              MR. PEREIRA:  The judge didn't tell you that?
 5              MS. CAMPBELL:  No.
 6              MR. PEREIRA:  The judge found as a matter of law --
 7              MS. CAMPBELL:  Yes.
 8              MR. PEREIRA:  -- that you were in contempt --
 9              MS. CAMPBELL:  But I did not get a letter.
10              MR. PEREIRA:  -- for various reasons and found as a
11    matter of law --
12              MS. CAMPBELL:  I didn't get that.
13              MR. PEREIRA:  Excuse me.  One person at a time
14    speaks.
15              MS. CAMPBELL:  Okay, sir.
16              MR. PEREIRA:  Found as a matter of law that you're
17    in contempt for various reasons and that you took $18,500 from
18    an account that you now admit you had signature authority on -
19    -
20              MS. CAMPBELL:  Yes.
21              MR. PEREIRA:  -- and still have signature authority
22    on, but you don't bother listing on your schedules.
23              MS. CAMPBELL:  They seized that account.  Those
24    people seized the account.  They shut down all the account, so
25    I don't have access to it from the time they shut it down.
```

```
 1  And they didn't even write me to tell me they have judgment
 2  for 18,000.  Where is the proof?
 3            MR. PEREIRA:  Why would they write you?
 4            MS. CAMPBELL:  They're not supposed to notify me?
 5            MR. PEREIRA:  Judges?
 6            MS. CAMPBELL:  If they do that --
 7            MR. PEREIRA:  You think a judge is supposed to write
 8  you --
 9            MS. CAMPBELL:  Or my attorney, my attorney.
10            MR. PEREIRA:  -- as the Defendant?
11            MS. CAMPBELL:  My attorney is supposed to know about
12  that and (indiscern.)
13            MR. PEREIRA:  I have no idea what your attorney did
14  or didn't do.
15            MS. CAMPBELL:  He did not do nothing.  I did not
16  hear anything about this.
17            MR. PEREIRA: All right.  Counsel?  Who wants to
18  start?
19            MS. KOPLOVITZ:  Gary, do you want to start, or do
20  you want me to start?
21            MR. PEREIRA:  I think we've got enough for a 727.
22            MS. KOPLOVITZ:  Okay.
23            MR. PEREIRA:  Do you understand that everything you
24  did was under oath under penalty of perjury?
25            MS. CAMPBELL:  Yes.
```

```
 1            MR. PEREIRA:  Okay, as long as you understood that,
 2    and that all your answers are under oath.
 3            MS. CAMPBELL:  Yes, sir.
 4            MR. PEREIRA:  Okay.  Go on.
 5            MS. KOPLOVITZ:  Your statement of financial affairs
 6    says that you have no interest or connection to any
 7    businesses, whether sole proprietor or self employed, any LLC
 8    partnership, you're not an officer, director or executive in
 9    any corporation, and you don't own 5% of equity in any
10    corporation.  You said that.  Are you sticking by that answer?
11            MS. CAMPBELL:  No.
12            MR. PEREIRA:  You're not?
13            MS. CAMPBELL:  Because this is one with the DVM
14    (indiscern.)
15            MR. PEREIRA:  Why isn't it listed?  Why did you say
16    under oath under penalty of perjury a month ago that you
17    didn't own any of them?
18            MS. KOPLOVITZ:  Actually, I think it was two weeks
19    ago.
20            MR. PEREIRA:  Two weeks ago.
21            MS. KOPLOVITZ:  Or less than two weeks ago.
22            MR. PEREIRA:  Two weeks ago.
23            MS. CAMPBELL:  Because the way this happened that
24    they took everything and it was just for flipping the
25    properties then.  And if the bank account is seized and
```

```
 1   everything and the Court (indiscern.) receiver.
 2          MR. PEREIRA:  Counsel?
 3          MS. KOPLOVITZ:  Yes.
 4          MS. KOPLOVITZ:  You also say you're self employed by
 5   Extreme Realty, is that true?
 6          MS. CAMPBELL:  Yes, yes.
 7          MS. KOPLOVITZ:  You're self employed by Extreme
 8   Realty?
 9          MR. PEREIRA:  Excuse me?
10          MS. KOPLOVITZ:  She says that she's self-employed by
11   Extreme Realty.
12          MR. PEREIRA:  Oh.
13          MS. KOPLOVITZ:  And she makes $2,000 a month as self
14   employment income from Extreme Realty.
15          MR. PEREIRA:  Oh, okay.  I thought you got rid of
16   Extreme Realty.
17          MS. CAMPBELL:  We have Extreme Realty Associates.
18   Extreme Realty Advance was gone.
19          MR. PEREIRA:  Next, counsel, on that question.
20          MS. KOPLOVITZ:  What's Extreme Realty Associates?
21          MS. CAMPBELL:  That's the company with my son.
22          MS. KOPLOVITZ:  And what -- you own a company with
23   your son?
24          MS. CAMPBELL:  No --
25          MS. KOPLOVITZ:  Extreme Realty Associates, you own
```